# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 06-395


ANTHONY ELIE

VERSUS

SEARS, ROEBUCK & COMPANY


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 04-04905
JAMES BRADDOCK, WORKERS' COMPENSATION JUDGE
**********

## SYLVIA R. COOKS
## JUDGE

**********

Court composed of Sylvia R. Cooks, Michael G. Sullivan, and Glenn B. Gremillion, Judges.

### AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.

George Flournoy
Flournoy & Doggett, (APLC)
P.O. Box 1270
Alexandria, LA 71309
(318) 487-9858
COUNSEL FOR PLAINTIFF/APPELLANT:
    Anthony Elie

Lance S. Ostendorf
John G. Alsobrook
Gabriel E. F. Thompson
Ostendorf, Tate, Barnett & Wells, LLP
650 Poydras Street, Suite 1460
New Orleans, LA 70130
(504) 527-0700
COUNSEL FOR DEFENDANT/APPELLEE:
    Sears, Roebuck & Company

**COOKS, Judge.**

The claimant, Anthony Elie, appeals the judgment of the Office of Workers' Compensation that found he was not entitled to continuing supplemental earnings benefits, the employer was owed a credit, and he was not entitled to certain penalties and attorney fees for late and/or non-payment of benefits.

### FACTS AND PROCEDURAL HISTORY

Anthony Elie alleges he injured his left arm and shoulder on June 20, 2001 while employed as a part-time worker at Sears, Roebuck & Company in Alexandria, Louisiana. Mr. Elie stated he was lifting a refrigerator when the injuries occurred. At the time of the incident, Mr. Elie earned $5.92 per hour at Sears, where he had "moonlighted" for approximately seven years. Mr. Elie also had a full-time job as a janitor with the Rapides Parish School Board, as well as another part-time "Sunday" job at Mount Calvary Baptist Church.

Sears sent Mr. Elie to Dr. Charles Smith for treatment following the accident. Dr. Smith prescribed anti-inflammatory medication and placed Mr. Elie into physical therapy. Mr. Elie was not able to perform his janitorial duties with the School Board, but continued working for the church and Sears, which found light-duty work for Mr. Elie. Sears began paying workers' compensation benefits to Mr. Elie in December of 2001.

When Mr. Elie complained the medication was not helping and he could not tolerate the physical therapy due to severe pain, Dr. Smith referred Mr. Elie to Dr. Jeffrey Garrison, an orthopedist. Dr. Garrison recommended that Mr. Elie undergo shoulder surgery. After the first surgery, which occurred in December 2002, Mr. Elie went back to work at the School Board, which found light duty work for him to perform. Sears could not or would not provide light duty work for Mr. Elie. The first

surgery was not as successful as desired, and Dr. Garrison informed Mr. Elie he would need a second surgery, involving a bone graft from his hip to his shoulder. Prior to undergoing the second surgery, which occurred on October 3, 2002, Mr. Elie submitted a letter of resignation to the School Board on September 10, 2002. Mr. Elie attended physical therapy for approximately four months after the second surgery. While there was marked improvement in his condition after the second surgery, Mr. Elie continued to complain of pain and physical limitations in his shoulder and hip.

On April 8, 2003, Sears allowed Mr. Elie to return to work. It also discontinued all payment of benefits on that date, even though he was no longer employed at the School Board. On July 22, 2003, Mr. Elie saw Dr. Garrison and related he had "good and bad days with his shoulder and sometimes has some pain and discomfort." Dr. Garrison found Mr. Elie had full active flexion and abduction motions. He recommended that Mr. Elie "be liberalized to full activity with regard to work and lifting."

On Mr. Elie's November 13, 2003 examination, Dr. Garrison noted he was having no significant pain and has "nearly full motion." Dr. Garrison concluded the "patient is asymptomatic with regards to his shoulder with only occasional discomfort and at this point, I think has reached maximum medical improvement. He is quite functional with it." Dr. Garrison scheduled Mr. Elie for a functional capacity evaluation (FCE).

The FCE, which was conducted on November 25, 2003, noted Mr. Elie "put forth valid, consistent and reliable effort throughout the evaluation." The FCE found Mr. Elie had a residual fifteen percent permanent partial impairment of his left arm and a nine percent impairment of his body as a whole. With the noted impairments,

he fell in the U.S. Department of Labor's Heavy (26 to 50 pounds) physical demand level.

On July 13, 2004, Mr. Elie filed a disputed claim for compensation against Sears. The WCJ noted that because Mr. Elie, at the time of the injury, was not working forty hours a week at Sears, he fell under the moonlighting provisions of the Workers' Compensation Act. Because Mr. Elie continued at all times to work for the church, the WCJ found he was not eligible for temporary total disability benefits, but was limited to a claim for supplemental earnings benefits (SEB). The WCJ calculated Mr. Elie's base monthly SEB wages to be $2,225.42 (which included his earnings from Mt. Calvary Church, $150.00; Sears, $553.41; and the School Board, $1522.01). Under La.R.S. 23:1202(A)(2), "In no event shall monthly Supplemental Earnings Benefits exceed four and three tenths times temporary total disability benefits." Thus, Mr. Elie would not be entitled to supplemental earning benefits that exceed four and three-tenths (4 3/10) times $157.87 a week (which is his temporary total disability compensation rate.) The WCJ concluded Mr. Elie was entitled to a maximum monthly supplemental earnings benefit of $678.84. There is no dispute among the parties that this is a correct calculation.[1]

The WCJ found Mr. Elie was entitled to SEB from September 10, 2001 through March 19, 2002, which encompassed the period of time between the injury and when Mr. Elie returned to light-duty work for the School Board after his first shoulder surgery. The WCJ held Mr. Elie was not entitled to SEB from March 20, 2002, when he returned to work at the School Board through September 10, 2002, when he

---

[1] At oral argument, the employer argued that it had paid Mr. Elie TTD benefits for a period of time when he was only entitled to SEB. We find nothing in the record to indicate Mr. Elie ever requested TTD benefits. His counsel has at all times in the record acknowledged that Mr. Elie was limited to SEB due to his continual employment at the church. In any event, even if the employer believed it was paying TTD benefits, it is of no consequence. All parties agreed the maximum amount Mr. Elie was ever entitled to was $678.84 per month, and Mr. Elie has never requested more than that.

resigned from his job with the School Board in anticipation of his second shoulder surgery. The WCJ held Mr. Elie was again entitled to receive SEB from September 11, 2002 through November 25, 2003. The WCJ concluded by November 25, 2003 Mr. Elie was "fully capable of performing heavy duty work which would mean he would be capable of performing his activities of a janitor at the School Board." Further, he noted Mr. Elie "chose" not to return to work at the School Board, instead accepting employment at Crossroads Regional Hospital. Therefore, the WCJ held any claim for continuing SEB subsequent to November 25, 2003 was denied.

As to Mr. Elie's claim for untimely payment of benefits, and the employer's request for a credit for excessive payments, the WCJ set forth the following oral reasons for judgment:

> Now we turn to probably the most complicated portion of Mr. Elie's claim, that being his claim for untimely payment of benefits, whether he's entitled to any type of SEB payments. If so, when. The employer's claim for credits. The records reflect that at no time did the employer pay Mr. Elie the correct compensation rate. They always paid an excessive compensation rate. So in making my best determination from grafting out the payments of the payments made by the employer to the employee, and I would like to note with respect to the payments to Mr. Elie that the records reflect there's a payment to Mr. Elie for a time period of March 20th of 2002 through April 2nd of 2002 of Three Hundred and Thirty-Two Dollars and Two cents ($332.02) per week when actually he was only due Three Hundred and Fifteen Dollars and Seventy-four Cents ($315.74) for that two-week period. Excuse me. That's a two-week period. Then subsequently in May of 2002, there was a tender of another sum of money to Mr. Elie which also included the two weeks of April 20th, I mean, of March 20, 2002 through April 2nd of 2002. And I apologize to counsel and to the Court of Appeal if I'm not being clear, but I'm going to do the best I can to show the credits due the employer and what SEB benefits may be due Mr. Elie. Based on the sums of overpayments made to Mr. Elie from December 12th of 2001 through March 19th of 2001, all of which show overpayments by the employer, this Court has calculated that there was a total overpayment during that time period of One Hundred and Thirty Dollars and Twenty-four Cents ($130.24). There has been an overpayment – a complete and total overpayment of workers' compensation benefits from March 20th of 2002 all the way through September 10th of 2002. And its this Court's conclusion that Mr. Elie failed to show his entitlement to any type of benefit be it TTD or SEB during this time frame. And I

-4-

point to the School records with respect to this time period which show that Mr. Elie apparently returned to work to the School Board. This was before his resignation. The records reflect that he earned some compensatory time during this time interval. There was a restricted work release from March 14th of 2002. The School records reflect that he was on extended leave up until approximately March 19th of 2002. The wage records from the School Board show he earned monies from that period of time all the way through September 10th of 2002. These wage earnings combined with his church earnings and combined with his – indicate that he was not entitled to any type of SEB. So the total amount of credit for that period of time is Four Thousand Six Hundred and Nineteen Dollars and Sixty-five Cents ($4,619.65). Further, there is a credit from September 12th of 2002 through September 17th of 2002 in the amount of One Hundred and Forty Dollars and Fifty-eight Cents ($140.58). The credit from September 12th of 2002 through April 7th of 2003 is One Hundred and Seventy-one Dollars and Ninety-two Cents ($171.92). Also, the record reflects that after his second surgery in October of 2002 and before his return to work at Sears in April of 2003, he had his own janitorial business for an unknown period of time, but he did testify that he netted an income of Twelve Hundred Dollars ($1,200.00) during this period of time. So the – adding up the total credits due the employer plus the janitorial income of Mr. Elie, the total overpayment is Six Thousand Two Hundred and Sixty-two Dollars and Thirty-nine Cents ($6,262.39). And Mr. Elie contended that he is entitled to benefits from April 7th of 2003 continuing on. However, this Court concluded that that ends November 25th of 2003. His SEB rate at no time could be greater than [Six Hundred and Seventy-eight Dollars and Eighty-four Cents ($678.84)]. Dividing Six Thousand Two Hundred and Sixty-two Dollars and Thirty-nine Cents ($6,262.39) by [Six Hundred and Seventy-eight Dollars and Eighty-four Cents ($678.84)], the employer is entitled to a credit against those months from April through November of 2003 which is a total of seven point one seven (7.17) months, but the total credit is nine point two three (9.23) months. So they have a credit that extends past any period of time Mr. Elie could be claiming any SEB from April through November of 2003.

The WCJ's final judgment, rendered on October 20, 2005, provided as follows:

1. Mr. Elie was entitled to SEB payments in the amount of $678.84 per month from September 10, 2001 through March 19, 2002, and from September 11, 2002 through November 25, 2003.

2. Sears was entitled to a credit for the "overpayment of benefits in the amount of $6,262.39" against SEB due from April 8, 2003 through November 24, 2003, leaving an excess credit of $969.74.

3. Mr. Elie's claim for SEB for the period from March 20, 2002 through September 10, 2002 is denied.

4. Mr. Elie's claim for SEB after November 25, 2003 is denied.

5. Mr. Elie was awarded a $2,000.00 penalty for the untimely payment of benefits from September 10, 2001 through October 10, 2001.

6. Mr. Elie was awarded a $2,000.00 penalty for the untimely payment of benefits from October 11, 2001 through November 11, 2001.

7. Mr. Elie was awarded a $1,400.00 penalty for the untimely payment of benefits from November 12, 2001 through December 11, 2001.

8. Mr. Elie was awarded $4,000.00 in attorney fees.

9. All other claims for workers' compensation benefits, penalties, and attorney fees were denied.

Mr. Elie has timely appealed the judgment, asserting the following assignments of error:

1. The WCJ erred in finding he was not entitled to SEB from March 20, 2002 through September 11, 2002, and that his entitlement to SEB ended on November 25, 2003.

2. The WCJ erred in calculating a total credit for the employer in the amount of $6,262.39.

3. The WCJ erred in not awarding penalties and attorney fees for the employer's unreasonable delay in paying benefits, when Mr. Elie was released to light-duty work on March 20, 2002, the employer's human resource manager refused to allow him to return to work, but benefits were not resumed until May 15, 2002.

4. When plaintiff returned to work for Sears on April 8, 2003, defendant was aware he was no longer working as a janitor and, thus, not earning 90% of his pre-injury wages, but still suspended all payment of benefits. The WCJ erred in not imposing a separate penalty and attorney fee for this unreasonable suspension of benefits.

## ANALYSIS

### I. *Entitlement To SEB From March 20, 2002 Through September 11, 2002.*

From March 20, 2002 through September 11, 2002 Mr. Elie earned wages from Mt. Calvary Church ($150.00 per month) and the School Board ($1,522.01). He was not allowed to work for Sears at this time. Mr. Elie notes this time frame is

encompassed within the period the WCJ found he was medically entitled to SEB. However, the WCJ stated "it's this Court's conclusion that Mr. Elie failed to show his entitlement to any type of benefit be it TTD or SEB during this time frame." Mr. Elie argues this was error, because even though he was earning his salary from his janitorial position with the School Board, he was not allowed to return to work at Sears and, thus, was not earning ninety percent of his pre-injury wages. We agree.

There was no change in Mr. Elie's medical condition or work limitations during this period. The law is clear that if an employee sustains a work injury that results in his inability to earn ninety percent or more of his average pre-injury wages, he is entitled to receive supplemental earnings benefits. *Banks v. Indus. Roofing & Sheet Metal Works, Inc.*, 96-2840 (La. 7/1/97), 696 So.2d 551. During this time period, Mr. Elie was earning $1,672.01. All parties agree his pre-injury monthly earnings were $2,225.42. Clearly, Mr. Elie's earnings during this time period were not ninety percent of his pre-injury wages (that amount would be $2,002.88). Therefore, he was entitled to receive SEB during this period, and the WCJ erred in not awarding same.

However, we note Mr. Elie would not be entitled to the maximum monthly amount of SEB, $678.84. The amount of SEB he was entitled to would be the difference in his pre-injury earnings and what he was actually earning ($2,225.42 minus $1,672.01) times .667, which would total $369.12. Thus, Mr. Elie was entitled to $369.12 per month in SEB during the period running from March 20, 2002 though September 11, 2002.

Mr. Elie also contends the WCJ erred in holding that his entitlement to SEB ended on November 25, 2003. He asserts he is entitled to continuing SEB payments, subject to any credit due the employer.

We must now determine if the trial court erred in ruling that Mr. Elie's entitlement to SEB ended on November 25, 2003. The WCJ set forth the following reasons for terminating SEB as of that date:

> Counsel for Mr. Elie points out that the therapist who performed the FCE stated that he had a 15 percent left shoulder impairment and a 9 percent whole body impairment. However, an impairment rating is not equivalent to restrictions for the purposes of seeking supplemental earnings benefits. So what the evidence – the medical evidence directly shows is that by November 25th of 2003 Mr. Elie is actually fully capable of performing heavy duty work which would mean he would be capable of performing his activities of a janitor at the School Board. He chose not to return tot he School Board. Instead, he sought employment at Crossroads.

Mr. Elie vehemently disputes the WCJ's conclusion that he *chose* not to return to his job as a janitor at the School Board. In his deposition, Mr. Elie set forth the following reasons for submitting his resignation:

> Okay, I went back to the school system [after the first surgery], and, well I finally had to have the second operation, I knew the School Board wasn't going to allow that. They had already, they don't have no light duty at the School Board, they just went along with it this time, but why I don't even know. But I knew the second time they wouldn't go along with it so I had to resign my job due to health reasons.

We have found nothing in the record to support the WCJ's conclusion that Mr. Elie voluntarily "chose" to leave his job at the School Board. Clearly, Mr. Elie's testimony indicates he believed he had no choice but to resign his job due to his physical restrictions and limitations. Further, he did not alternatively accept employment at Crossroads. He did not begin working for Crossroads until September 4, 2004, over nine months after the WCJ found he was no longer entitled to SEB. Therefore, the only valid justification for terminating Mr. Elie's entitlement to SEB on November 25, 2003 would have been based on the medical records.

By November 25, 2003, Dr. Garrison found plaintiff had "nearly full motion" in his shoulder, had reached maximum medical improvement, and was "quite

-8-

functional" with his shoulder. Dr. Garrison then scheduled the FCE, which was performed on November 25, 2003. The FCE concluded Mr. Elie suffered from a fifteen percent permanent partial impairment of his left arm and a nine percent impairment of his body as a whole. The impairments were based on Mr. Elie's "demonstrated loss of motion." Although Mr. Elie fell into the Heavy (twenty-six to fifty pounds) physical demand level, the FCE found he could only lift forty-one pounds due to his shoulder pain. The FCE also found Mr. Elie suffered from pain in his hip, due to the bone graft.

Mr. Elie testified he was never told by anyone, including Dr. Garrison, that he could safely resume his work duties as a janitor. Mr. Elie stated when he was examined by Dr. Garrison after the FCE, he was told he was to be maintained on light duty work restrictions. Our review of the record finds no testimony in the record which specifically states Mr. Elie could return to his janitor job with the School Board. Dr. Garrison's conclusions that Mr. Elie had reached MMI and was "quite functional" with his shoulder do not equate to a finding that Mr. Elie could physically perform the required janitorial duties. Mr. Elie gave the following testimony regarding his physical limitations:

> It's the same as with the business that I tried to incorporate. All the lifting and all the move – okay. The schools – I don't know if any of y'all are familiar with being a janitor. You cut grass, you weed-eat, you hedge, you clean windows that's over your head, inside and out, you pick up desks constantly all through the day when you got to sweep and mop the rooms out, strip floors, wax floors. I can't do that anymore.

We are troubled by the WCJ's reference that Mr. Elie "chose" to leave his job for another at Crossroads, which as set forth earlier is inaccurate. His reasoning leads us to conclude he terminated Mr. Elie's SEB entitlement on something other than the medical evidence, which is not conclusive given Mr. Elie's motion and lifting limitations. Therefore, we find the WCJ erred in concluding Mr. Elie could return to

work as a janitor but chose not to after November 25, 2003 and in terminating his right to SEB on that date.

Initially, we note during the trial, counsel for Mr. Elie acknowledged, on September 4, 2004, Mr. Elie accepted a job at Crossroads Regional Hospital. Counsel for Mr. Elie recognizes, with the acceptance of the job with Crossroads, there may be months where Mr. Elie earns sufficient wages so that he is not entitled to SEB.

Louisiana Revised Statute 23:1221(3)(d)(i) sets forth the circumstances under which an employee's SEB payments will terminate. It provides:

> (3) Supplemental earnings benefits.
>
> . . . .
>
> (d) The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks, but shall terminate:
>
> (i) As of the end of any two-year period commencing after termination of temporary total disability, unless during such two-year period supplemental earnings benefits have been payable during at least thirteen consecutive weeks[.]

Thus, Mr. Elie's right to SEB will be terminated if he cannot show that, during any two-year period, supplemental earnings benefits have been payable during at least thirteen consecutive weeks. The record before us does not show that this event occurred.

## II.   *WCJ's Credit Calculation.*

Mr. Elie contends the WCJ erred in calculating a total credit for the employer in the amount of $6,262.39. Our previous discussion concerning Mr. Elie's SEB entitlement indicates the WCJ's calculations in this regard are inaccurate. The WCJ held Mr. Elie was not eligible to receive SEB from March 19, 2002 through September 10, 2002. As explained earlier, this holding was in error, and Mr. Elie should have received $369.12 per month in benefits during this time period. It is

noted that the employer did pay benefits during this time, and at a rate that exceeded the actual amount owed.

The employer erroneously terminated benefits on April 8, 2003. Although the WCJ found the employer should have paid benefits from that date until November 25, 2003, he found it had "a credit that extends past any period of time Mr. Elie could be claiming any SEB from April through November of 2003." Simply put, the WCJ stated that the previous overpayments by the employer exceeded any non-payments subsequently made. We disagree.

A review of the record clearly displays the WCJ erred in calculating a total credit for the employer of $6,262.39. Examining Mr. Elie's work history from September 2001 through November 2003 indicates he should have received $16,384.14 during that period.[2] An examination of the adjuster's payment records reveals Mr. Elie was only paid $12,193.13 over that period. Clearly, this underpayment resulted from Sears' unilateral decision to terminate Mr. Elie's benefits on April 8, 2003. We do note that Mr. Elie acknowledged he earned $1,200.00 in income from a janitorial service he operated between December 2002 and April 2003. The employer is entitled to a credit for this amount.

III.    *Penalties and Attorney Fees.*

Mr. Elie argues the WCJ erred in not awarding sanctions for the employer's termination of benefits from April 8, 2003 through November 25, 2003. The WCJ justified his decision on the grounds that previous overpayments made by the employer were in excess of the amount of SEB owed during the April 8, 2003 to November 25, 2003 time period. Mr. Elie disputes the assertion that an employer can

---

[2] This calculation includes the monthly maximum amount of SEB ($678.84) Mr. Elie was entitled to for all months from September 2001 through November 2003, excluding September 2001 (when Mr. Elie was only owed $592.62 because he earned his full wages from the School Board for part of the month) and the months of March 2002 through July 2002 (when Mr. Elie was only entitled to $369.12 due to the School Board finding him light duty work for those months).

justifiably withhold benefits when there has been a previous overpayment in excess of the owed benefits. Based on our earlier determination that the WCJ erred in concluding the employer had a credit in excess of the benefits owed for this period, we find this argument is factually unsupportable.

In is undisputed the employer owed benefits for the period from April 8, 2003 through November 25, 2003 and did not have a credit in excess of the amount of benefits owed. Therefore, the WCJ erred in failing to impose a $2,000.00 penalty and $2,000.00 in attorney fees under La.R.S. 23:1201(F).

Mr. Elie also argues the WCJ should have imposed sanctions against the employer for not paying benefits due from March 20, 2002 until May 15, 2002. Apparently, on March 20, 2002, Dr. Garrison gave Mr. Elie a return to work at light duty status. According to Mr. Elie, the workers' compensation adjuster for Sears was aware of the release and assumed Sears would provide him with light duty work. Since Mr. Elie was at that time working for both the School Board and Mt. Calvary Church, the adjuster terminated Mr. Elie's benefits, assuming he would be at his full pre-injury wages. However, Sears would not provide Mr. Elie with a job within Dr. Garrison's work restriction. Plaintiff testified he spoke on several occasions with the adjuster about Sears' refusal to return him to work and in reinstating his benefits. Despite this, benefits were not resumed until May 15, 2002.

The employer does not dispute that it did not make these payments timely. Its only defense is that Mr. Elie had already received the monies due to him in previous overpayments. As stated earlier, this argument is baseless, and the WCJ erred in not awarding a $2,000.00 penalty and $2,000.00 in attorney fees pursuant to La.R.S. 23:1201(F) for this failure.

**DECREE**

-12-

For the above reasons, the portion of the lower court judgment finding Anthony Elie was not entitled to SEB from March 20, 2002 through September 11, 2002, his entitlement to SEB ended on November 25, 2003, and the employer was entitled a credit for the "overpayment of benefits in the amount of $6,262.39 is reversed. Judgment is hereby rendered finding Anthony Elie is entitled to SEB from September 10, 2001 and continuing in accord with La.R.S. 23:1221(3), subject to a credit for all prior indemnity payments made by the employer. The employer is entitled to a credit for the monies earned from his janitorial business between December 2002 and April 2003. Mr. Elie is awarded a $2,000.00 penalty and $2,000.00 in attorney fees for the defendant's unreasonable delay in paying benefits on March 20, 2002 through May 15, 2002. Mr. Elie is also awarded a $2,000.00 penalty and $2,000.00 in attorney fees for the employer's unreasonable suspension of benefits on April 8, 2003 through November 25, 2003. All costs of this appeal are assessed to the employer, Sears, Roebuck & Company.

**AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.**